# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## PEOPLE v MASI

Docket No. 165620. Argued on application for leave to appeal March 12, 2025. Decided July 14, 2025.

Carl T. Masi was bound over to the Macomb Circuit Court on 12 counts of first-degree criminal sexual conduct, MCL 750.520b, and four counts of second-degree criminal sexual conduct, MCL 750.520c, involving alleged acts against AU, SU, and MU. The complainants began living with defendant as minor children, and they each alleged that defendant began sexually assaulting them at that time. Defendant sought to admit several pieces of evidence related to the complainants' sexual histories, including evidence that AU viewed pornography during the course of prior sexual abuse committed by a third party, AU's uncle. The trial court, James M. Biernat, Jr., J., denied defendant's motion, concluding that evidence that AU viewed pornography during the alleged prior sexual abuse constituted "sexual conduct" that was subject to the rape-shield statute, MCL 750.520j, and that the evidence was inadmissible under *People v Morse*, 231 Mich App 424 (1998), because there was no conviction related to the prior sexual abuse allegedly perpetrated by AU's uncle. On interlocutory appeal, the Court of Appeals, N. P. HOOD, P.J., and CAMERON and GARRETT, JJ., held, in relevant part, that evidence that AU viewed pornography during the course of alleged sexual abuse committed by her uncle was "sexual conduct" under MCL 750.520j(1), and the Court of Appeals affirmed the trial court's ruling excluding the evidence under *Morse*. 346 Mich App 1 (2023). Defendant sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on the application. 512 Mich 961 (2023).

In a unanimous opinion by Justice BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The plain meaning of the phrase "sexual conduct" in the rape-shield statute, MCL 750.520j, encompasses both voluntary and involuntary behavior, and *Morse* was overruled to the extent that it requires a conviction related to the prior sexual conduct of a complainant.

1. The rape-shield statute, MCL 750.520j, limits the admissibility of evidence of a complainant's sexual conduct by generally excluding evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct, MCL 750.520j(1). The plain meaning of "sexual conduct" in MCL 750.520j(1) encompasses individual behaviors—including acts and responses—that involve or are

associated with sexual activities; this interpretation includes both voluntary and involuntary behavior. Accordingly, nonvolitional acts, such as involuntarily viewing pornography during the course of sexual abuse, constitute "sexual conduct" within the meaning of the rape-shield statute. The conclusion that MCL 750.520j(1) bars admissibility of certain evidence of both voluntary and involuntary sexual conduct was supported by the text of the statute and the statute's legislative purpose, and it aligned with many other jurisdictions' interpretations of similar statutes. Therefore, the Court of Appeals properly held that evidence that AU viewed pornography during the course of alleged sexual abuse committed by a third party was "sexual conduct" subject to the protections of the rape-shield statute.

2. The Court of Appeals in *Morse* developed the framework for admitting evidence of alleged prior sexual abuse by a third party, otherwise excluded by the rape-shield statute, to provide an alternative explanation for a complainant's age-inappropriate sexual knowledge in light of a defendant's constitutional right to confrontation and right to present a defense. *Morse* held that, when determining the admissibility of evidence that is otherwise inadmissible under the rape-shield statute for the purpose of complying with a defendant's right of confrontation, courts are required to conduct an *in camera* hearing to determine whether (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainant, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding. *Morse* was overruled to the extent that it required a conviction related to the prior sexual conduct of a complainant because this conviction requirement is unduly burdensome and because a prior conviction should not be the determining factor for admitting evidence of conduct otherwise barred by the rape-shield statute. Instead, once a sufficient offer of proof is made by a defendant, the trial court must hold an *in camera* evidentiary hearing to determine whether the defendant is constitutionally entitled to present particular evidence that is otherwise excluded under the rape-shield statute. At the hearing, the court must determine whether the defendant has shown that (1) the prior act occurred, (2) the act closely resembled those at issue, (3) the act is relevant to a material issue, (4) the evidence is necessary to the defendant's case, and (5) the probative value of the evidence outweighs its prejudicial effect. These factors properly balance both the interests of a defendant and the interests of a minor child by allowing for the examination of a minor child's sexual knowledge only when there has been a sufficient showing that the evidence is necessary to preserve a defendant's right to confrontation or right to present a defense. In this case, the lower courts were obligated to apply the conviction requirement articulated in *Morse*; accordingly, this case was remanded to the trial court to conduct an *in camera* evidentiary hearing to apply the new standard articulated in this opinion. The trial court was directed to determine whether defendant presents sufficient proof to admit the evidence of prior sexual abuse in this case and, if necessary, make a preliminary determination as to whether, and the extent to which, the evidence is otherwise admissible under the rules of evidence.

Affirmed in part, vacated in part, and case remanded to the Macomb Circuit Court for further proceedings.

Justice HOOD did not participate because the Court considered this case before he assumed office and because he was on the Court of Appeals panel.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 14, 2025

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

 Plaintiff-Appellee,

v            No. 165620

CARL THOMAS MASI,

 Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except HOOD, J.)

BOLDEN, J.

In this interlocutory appeal, defendant, Carl Thomas Masi, awaits trial on multiple counts of criminal sexual conduct (CSC) arising out of allegations that he sexually abused the minor complainants, AU, MU, and SU. Central to this case is whether the rape-shield statute, MCL 750.520j, prohibits a defendant from introducing evidence of prior sexual abuse of an alleged victim to explain the victim's age-inappropriate sexual knowledge. Specifically, defendant argues that evidence that AU viewed pornography during the

course of alleged sexual abuse committed by her uncle is not "sexual conduct" under MCL 750.520j(1) and thus is not barred under the rape-shield statute. Additionally, defendant challenges whether *People v Morse*, 231 Mich App 424, 437; 586 NW2d 555 (1998), properly articulated the test for the admissibility of evidence of prior sexual abuse of a minor otherwise subject to the rape-shield statute in light of a defendant's Sixth Amendment right to confrontation. *Morse* held that, for the evidence to be admissible, a defendant must show, in relevant part, "that another person was convicted of criminal sexual conduct involving the complainant[] . . . ." *Id.*

We agree with the lower courts that evidence related to prior sexual abuse of a minor is "sexual conduct" under MCL 750.520j(1). However, we overrule the admissibility test articulated in *Morse* to the extent that it requires evidence of a prior conviction. Accordingly, we affirm in part and vacate in part the lower courts' decisions and remand this case to the trial court to conduct an *in camera* evidentiary hearing that is consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant awaits trial on 12 counts of first-degree CSC (CSC-I), MCL 750.520b, and four counts of second-degree CSC (CSC-II), MCL 750.520c, involving alleged acts against AU, SU, and MU. AU, SU, and MU began living with defendant as minor children, and they each allege that defendant began sexually assaulting them at that time.

Defendant sought to admit several pieces of evidence related to the complainants' sexual histories, including, relevant to this appeal, evidence that AU viewed pornography during the course of prior sexual abuse committed by her Uncle Robby. In denying

2

defendant's motion, the trial court concluded that evidence that AU viewed pornography during the alleged prior sexual abuse involving Uncle Robby constituted "sexual conduct" that was subject to the rape-shield statute and that the evidence was inadmissible under *Morse* because there was no conviction related to the prior sexual abuse allegedly perpetrated by Uncle Robby.

On interlocutory appeal, the Court of Appeals held, in relevant part, that evidence that AU viewed pornography during the course of alleged sexual abuse committed by her uncle was "sexual conduct" under MCL 750.520j(1), and the Court of Appeals affirmed the trial court's ruling excluding the evidence under *Morse*. *People v Masi*, 346 Mich App 1, 18-21; 11 NW3d 521 (2023).[1]

Defendant sought leave to appeal in this Court. We granted oral argument on the application to consider the following issues:

> (1) whether a child complainant's act of viewing pornography during the course of sexual abuse by a relative constitutes "sexual conduct" for purposes of the rape-shield statute, MCL 750.520j; (2) whether the rape-shield statute precludes the admission of evidence that the child complainants were subjected to prior sexual abuse, to explain their age-inappropriate sexual knowledge, unless the defendant proves that another person was convicted of criminal sexual conduct involving the complainants, and the facts underlying the previous conviction are significantly similar to the charged conduct to be relevant to the instant proceeding, see *People v Morse*, 231

---

[1] The Court of Appeals reversed in part the trial court's decision and held that "evidence of a victim viewing lawful pornography, without more, is not evidence of 'sexual conduct' subject to Michigan's rape-shield statute." *Masi*, 346 Mich App at 15. The Court of Appeals remanded the case to the trial court for it to determine whether that evidence was otherwise admissible under the Michigan Rules of Evidence. *Id*. at 17-18. This holding stemmed from evidence that SU viewed pornography on her own, not during the course of sexual abuse. However, because that holding is not challenged on appeal, we do not consider it here.

3

Mich App 424, 437 (1998); and (3) whether barring evidence of the complainants' prior sexual abuse and of a complainant's viewing of pornography during the course of prior sexual abuse would constitute a denial of the defendant's constitutional right to confrontation or the right to present a defense, see *People v Arenda*, 416 Mich 1[; 330 NW2d 814] (1982). [*People v Masi*, 512 Mich 961, 961 (2023).]

## II. STANDARD OF REVIEW

A trial court's evidentiary decisions are reviewed for an abuse of discretion. *People v Sharpe*, 502 Mich 313, 323; 918 NW2d 504 (2018). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). Evidentiary rulings involving underlying questions of law, "such as whether a statute precludes admissibility of evidence," are reviewed de novo. *Sharpe*, 502 Mich at 324.

## III. THE RAPE-SHIELD STATUTE

The rape-shield statute, MCL 750.520j, "serves to limit the admissibility of evidence of a complainant's sexual conduct," *Sharpe*, 502 Mich at 325, by generally excluding "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct," MCL 750.520j(1). This Court has interpreted the statute to bar "evidence of *all* sexual activity by the complainant not incident to the alleged rape" subject to two narrow exceptions not applicable here. *People v Adair*, 452 Mich 473, 478; 550 NW2d 505 (1996) (quotation marks and citation omitted). We have recognized that "[t]he rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." *Sharpe*, 502 Mich at 326 (quotation marks and citation

4

omitted).  To that end, this Court has stressed that a witness's "sexual history is usually irrelevant as impeachment evidence because it has no bearing on character for truthfulness." *Adair*, 452 Mich at 481, citing MRE 608.

## A.  THE MEANING OF "SEXUAL CONDUCT" UNDER MCL 750.520j(1)

The Court of Appeals held that evidence that AU viewed pornography with her Uncle Robby was "sexual conduct" subject to the protections of the rape-shield statute "because it occurred amidst alleged acts of sexual abuse perpetrated by Uncle Robby." *Masi*, 346 Mich App at 15.  Defendant argues that evidence of a child complainant viewing pornography during the course of sexual abuse is not "sexual conduct" under MCL 750.520j(1) because involuntary actions do not constitute "sexual conduct."  Rather, he argues that "sexual conduct" encompasses voluntary acts only.  We disagree.

The rape-shield statute does not define "sexual conduct."  Thus, resolution of this issue hinges on the meaning of "sexual conduct" in MCL 750.520j(1).[2]  "When interpreting a statute, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language." *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018) (quotation marks and citation omitted).  We first examine "the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Id*. (quotation marks and citation omitted).  When statutory language is clear and unambiguous, "we assume that the Legislature intended its plain meaning and we enforce the statute as written." *Sharpe*,

---

[2] We note that this Court has previously "encourage[d] the Legislature to clarify whether evidence of prior sexual abuse constitutes 'sexual conduct' within the meaning of the rape-shield statute, MCL 750.520j." *People v Duenaz*, 498 Mich 969, 969 (2016).  However, the Legislature has not yet clarified this phrase.

502 Mich at 326-327 (quotation marks and citation omitted). If the statutory language is ambiguous, judicial construction is appropriate. See *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000). "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017); see also *Sharpe*, 502 Mich at 328.

Because the Legislature has not defined the phrase "sexual conduct," the Court of Appeals appropriately consulted a dictionary to help determine the meaning of the phrase. *Masi*, 346 Mich App at 12-13. We, too, begin our analysis with the relevant dictionary definitions. "Sexual" is defined as "of, relating to, or associated with sex or the sexes" or "having or involving sex[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). "Sex" has been defined as "the instinct or attraction drawing one individual sexually toward another, or the cultural phenomena, behavior, or activities that it motivates." *Random House Webster's College Dictionary* (2001). "Conduct" is defined as "a mode or standard of personal behavior esp[ecially] as based on moral principles" or "the act, manner, or process of carrying on[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). The definition of "conduct" refers to "personal behavior." See *id*. "Behavior" is defined as "the way in which someone behaves"; "the manner of conducting oneself"; "anything that an organism does involving action and response to stimulation"; or "the way in which something functions or operates[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed); see also *Random House Webster's College Dictionary* (2d ed) (defining "behavior" as "the aggregate of responses to internal and external stimuli"). In keeping with these definitions, we interpret the plain meaning of "sexual conduct" in MCL 750.520j(1) as encompassing

6

individual behaviors—including acts and responses—that involve or are associated with sexual activities. This interpretation does not require an act of volition. After all, an "action and response to stimulation" need not be volitional. We therefore hold that nonvolitional acts, such as involuntarily viewing pornography during the course of sexual abuse, constitute "sexual conduct" within the meaning of the rape-shield statute. Our holding that "sexual conduct" includes both voluntary and involuntary behavior is consistent with this Court's prior decisions.

This Court's justices have offered divided views on what the phrase "sexual conduct" encompasses. In a concurrence to this Court's denial of leave in *People v Parks*, 483 Mich 1040 (2009), Justice YOUNG looked to dictionary definitions to define "conduct" in the statute, explaining that, in the criminal context, the term "encompasses *all* of one's 'personal behavior,'" whether voluntary or involuntary, *id*. at 1044 (YOUNG, J., concurring). Justice YOUNG explained that this definition "is consistent with our caselaw applying the rape shield statute to victims of prior sexual abuse," *id*. at 1046, citing *Morse*, 231 Mich App 424, and *Arenda*, 416 Mich 1, as well as legislative history, *Parks*, 483 Mich at 1045 (YOUNG, J., concurring) (noting that the Legislature had intentionally omitted the term "consensual" from the statute). By contrast, in two dissents, Justice MARKMAN offered a narrower interpretation of the term "conduct" in the statute. Dissenting from this Court's denial of leave in *People v Piscopo*, 480 Mich 966 (2007), he asserted that "the use of 'conduct' throughout the [rape-shield] statute suggests strongly that the Legislature must have intended 'conduct' to refer to volitional behavior and that the term does not encompass involuntary sexual abuse," *id*. at 970 (MARKMAN, J., dissenting). Justice MARKMAN elaborated on this view in his dissent in *Parks*, explaining that "[i]f 'conduct'

7

is read to include abuse perpetrated *against* the victim by *other* persons, then references in the statute to 'opinion evidence of the victim's sexual conduct' and 'reputation evidence of the victim's sexual conduct' make no sense." *Parks*, 483 Mich at 1060 (MARKMAN, J., dissenting) (citation omitted). He also looked to criminal statutes, asserting that "[i]t seems unlikely that the Legislature intended to punish non-volitional activity under the criminal code." *Id*. at 1061 (citing MCL 750.520b as an example of a criminal statute that punishes " 'conduct' ").

This Court has previously considered whether evidence of prior sexual abuse is protected by the rape-shield statute. Although the focus of our *Arenda* decision was whether the rape-shield statute infringed upon the defendant's Sixth Amendment right of confrontation, *Arenda*, 416 Mich at 5, 7-11, this Court implicitly recognized that prior alleged sexual abuse of a minor victim is within the rape-shield statute's protections. In *Arenda*, the defendant was convicted of three counts of CSC-I involving an eight-year-old victim. *Id*. at 5-6. The defendant sought to admit evidence of the minor victim's "possible sexual conduct with others to explain the victim's ability to describe the sexual acts that allegedly occurred and to dispel any inference that this ability resulted from experiences with defendant." *Id*. at 11. At trial, the defendant cross-examined the victim regarding the victim's possible sources of sexual knowledge and repeatedly asked the victim about possible sexual conduct with others; the victim gave negative responses. *Id*. at 14. The trial court then prohibited the defendant from "further inquiries." *Id*.

In considering the defendant's claim that evidence of the victim's prior alleged sexual conduct with others was admissible, this Court observed that

8

the only cases in which such evidence can arguably have more than a *de minimis* probative value are ones involving young or apparently inexperienced victims. These children and others are the ones who are most likely to be adversely affected by unwarranted and unreasonable cross-examination into these areas. They are among the persons whom the statute was designed to protect. [*Id.* at 13.]

The Court noted that evidence concerning the source of a victim's sexual knowledge and the victim's "ability to describe a sexual act may be relevant," particularly in cases involving young or inexperienced victims. *Id.* In other words, this Court implicitly recognized that prior alleged sexual acts of a minor victim involving a third party constituted "sexual conduct" within the meaning of MCL 750.520j(1). Court of Appeals caselaw post-dating *Arenda* has also consistently applied the rape-shield statute to prior alleged sexual abuse, including cases involving child victims. See, e.g., *People v Duenaz*, 306 Mich App 85, 92; 854 NW2d 531 (2014).

Defendant urges this Court to adopt Justice MARKMAN's position that the meaning of "sexual conduct" encompasses only voluntary actions by the complainant. *Piscopo*, 480 Mich at 969-970 (MARKMAN, J., dissenting). According to defendant, concluding that involuntary behavior is "conduct" under MCL 750.520j would unnecessarily expand the legislative purpose of the rape-shield statute because a victim's involuntary actions cannot be said to establish the victim's character and because evidence of involuntary behavior is not admitted for the purpose of shaming, harassing, or embarrassing the victim. We decline to adopt this position.

Our determination that both voluntary and involuntary—or nonconsensual—acts constitute "sexual conduct" and thus are generally inadmissible for the purposes of the rape-shield statute is consistent with the statutory text and legislative purpose of MCL

750.520j. To reiterate, the rape-shield statute generally prohibits trial courts from admitting "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct . . . ." MCL 750.520j(1). The phrase "sexual conduct" is not modified by "voluntary" or "consensual." See MCL 750.520j(1). "[S]ound principles of statutory construction require that Michigan courts determine the Legislature's intent from its words, not from its silence." *People v Gardner*, 482 Mich 41, 58; 753 NW2d 78 (2008) (quotation marks, citation, and emphasis omitted); see also *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217-218; 801 NW2d 35 (2011) ("Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself.") (quotation marks and citation omitted).

Here, the Legislature did not explicitly exclude involuntary sexual conduct from the rape-shield statute's protections. The plain meaning of "sexual conduct" supports our interpretation that both voluntary and involuntary acts and behaviors constitute "sexual conduct" within the meaning of MCL 750.520j. Additionally, as recognized by Justice YOUNG, the Legislature removed the word "consensual" from the original proposed legislation. *Parks*, 483 Mich at 1045 (YOUNG, J., concurring).[3] We agree that "[t]he protections of the rape shield statute, therefore, do not distinguish involuntary 'sexual

---

[3] We also note that this Court has previously and expressly declined to "adopt Chief Justice MARKMAN's definition of the term 'conduct' as expressed in his concurring opinion for the reasons noted by Justice YOUNG in" his *Parks* concurrence. *Sharpe*, 502 Mich at 328 n 8.

10

conduct' experienced as a victim of sexual abuse from voluntary 'sexual conduct' engaged in as a consenting adult." *Id*.

As a practical matter, this Court has recognized that the rape-shield statute has a broad purpose and reflects a "legislative determination that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." *Arenda*, 416 Mich at 10. Additionally, this Court has observed that "[t]he rape-shield statute was aimed at thwarting the then-existing practice of impeaching the complainant's testimony with evidence of the complainant's prior consensual sexual activity, which discouraged victims from testifying because they knew their private lives would be cross-examined." *Adair*, 452 Mich at 480 (quotation marks, citation, and brackets omitted); see also *Michigan v Lucas*, 500 US 145, 149-150; 111 S Ct 1743; 114 L Ed 2d 205 (1991) ("The Michigan [rape-shield] statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.").

We conclude that the same policy considerations underlying the rape-shield statute's general prohibition into a complainant's consensual sexual history apply equally to involuntary acts or nonconsensual sexual behavior. Excluding evidence of consensual sexual acts by a complainant under MCL 750.520j but permitting evidence of prior sexual abuse is inconsistent with the statute's purpose. Just as with consensual sexual history, evidence of a victim's prior sexual abuse by a third party could be used to harass, embarrass, or shame the victim. Similarly, such evidence also might "carry a danger of unfairly prejudicing and misleading the jury," *Arenda*, 416 Mich at 10, and might discourage victims from testifying, *Adair*, 452 Mich at 480. In summary, we conclude that

11

the Legislature did not intend to limit the protections afforded by the rape-shield statute to voluntary sexual conduct only.

Moreover, several jurisdictions have interpreted their rape-shield statutes as prohibiting the admission of involuntary sexual conduct—not just voluntary or consensual sexual activity. See *Parks*, 483 Mich at 1046-1047, 1047 n 23 (YOUNG, J., concurring) (explaining that 20 jurisdictions had "read their rape shield protections as encompassing both voluntary sexual conduct and involuntary sexual conduct"). In sum, the conclusion that MCL 750.520j bars admissibility of certain evidence of both voluntary and involuntary sexual conduct is supported by the text of the statute and the statute's legislative purpose, and it aligns with many other jurisdictions' interpretations of similar statutes. Therefore, we affirm the Court of Appeals' holding that evidence that AU viewed pornography with her Uncle Robby during the course of alleged sexual abuse was "sexual conduct" subject to the protections of the rape-shield statute.

## B. *MORSE* INCORRECTLY HELD THAT A PRIOR CONVICTION WAS A DETERMINING FACTOR OF ADMISSIBILITY

Having concluded that evidence of prior sexual abuse, whether voluntary or involuntary, is "sexual conduct" that is generally barred by the rape-shield statute, we consider whether such evidence is admissible to preserve a defendant's right to confrontation and right to present a defense. See *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984) (recognizing that, under some circumstances, the rape-shield statute must yield to a defendant's constitutional rights). We now consider the test articulated in *Morse*.

12

In *Morse*, the Court of Appeals developed the framework for admitting evidence of alleged prior sexual abuse by a third party, otherwise excluded by the rape-shield statute, to provide an alternative explanation for a complainant's age-inappropriate sexual knowledge in light of a defendant's constitutional right to confrontation and right to present a defense. *Morse*, 231 Mich App at 428, 437. *Morse* reviewed this Court's precedent, including *Arenda* and *Hackett*, and considered decisions from other jurisdictions that provided tests for determining the admissibility of such evidence. *Id*. at 430-436. Specifically, *Morse* considered cases from other jurisdictions, such as *People v Hill*, 289 Ill App 3d 859, 862-865; 683 NE2d 188 (1997), *State v Pulizzano*, 155 Wis 2d 633, 651-652; 456 NW2d 325 (1990), and *State v Budis*, 125 NJ 519, 533; 593 A2d 784 (1991). Finding this authority persuasive, *Morse* held that, when determining the admissibility of evidence that is otherwise inadmissible under the rape-shield statute for the purpose of complying with a defendant's right of confrontation, courts are required to conduct an *in camera* hearing to determine whether "(1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainant[], and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding." *Morse*, 231 Mich App at 437.

We agree with the *Morse* panel that, under some circumstances, admission of evidence regarding a complainant's prior sexual abuse is constitutionally required in light of a defendant's right to confrontation and right to present a defense. See *Hackett*, 421

Mich at 348.[4]  However, we disagree that admission of such evidence is constitutionally

required only if there was a prior *conviction* for sexual abuse.  *Morse* found persuasive the

tests articulated in *Hill* and *Pulizzano*, but neither case required a party to show that prior

acts of sexual abuse resulted in a conviction.  In *Hill*, the Illinois Appellate Court held "that

under proper circumstances, evidence of a child witness's prior sexual conduct is

admissible to rebut the inferences that flow from a display of unique sexual knowledge."

*Hill*, 289 Ill App 3d at 864.  Further, "[w]hen prior sexual abuse is tendered to explain age-

inappropriate knowledge, the proof must be carefully examined before admission."  *Id*.  It

further explained:

> The prior sexual conduct must be sufficiently similar to defendant's alleged
> conduct to provide a relevant basis for its admission.  It must engage the same
> sexual acts embodied in the child's testimony.  Further, if the prior sexual
> conduct cannot fully rebut the knowledge displayed, if it fails to account for
> certain sexual details unique to the charged conduct, its admission should be
> precluded.  Simply put, the prior sexual conduct must account for how the
> child could provide the testimony's sexual detail without having suffered
> defendant's alleged conduct.  [*Id*. at 864-865.]

In *Pulizzano*, 155 Wis 2d at 651-652, the Wisconsin Supreme Court articulated a

similar test, requiring that a defendant

> make an offer of proof to establish that (1) the prior act clearly occurred, (2)
> the act closely resembled those at issue, (3) the act is relevant to a material
> issue, (4) the evidence is necessary to the defendant's case, and (5) the

---

[4] In *Arenda*, this Court held that the rape-shield statute could constitutionally bar the admission of evidence related to a minor victim's sexual conduct with others to explain age-inappropriate sexual knowledge and that such evidence was properly excluded in that case.  *Arenda*, 416 Mich at 8-11.  We agree with *Morse* that *Arenda* did not create a per se rule that the admission of such evidence was *never* required to protect a defendant's constitutional rights.  See *Morse*, 231 Mich App at 431-433.

probative value of the evidence outweighs its prejudicial effect. [*Morse*, 231 Mich App at 435, citing *Pulizzano*, 155 Wis 2d at 651-652.]

*Morse* noted the caution expressed by the New Jersey Supreme Court decision, *Budis*, 125 NJ at 533, which directed courts to consider the trauma to the child and the invasion of the child's privacy when assessing the prejudicial effect of eliciting evidence of prior sexual abuse of the child. *Morse*, 231 Mich App at 435-436. The New Jersey Supreme Court recognized that the prejudicial effect of admitting evidence of prior sexual abuse of a child "*may be* diminished if the evidence can be adduced from sources other than the child." *Budis*, 125 NJ at 533 (emphasis added). However, *Budis* also did not require evidence of a conviction arising out of prior sexual abuse of a child.

Here, the Court of Appeals held that evidence that AU viewed pornography during alleged acts of sexual abuse perpetrated by her Uncle Robby was inadmissible because the evidence did not satisfy the requirements for admissibility under *Morse*, given that Uncle Robby was not convicted of sexually abusing AU. Additionally, the Court of Appeals concluded that "Uncle Robby's alleged abuse of AU was not 'significantly similar' to the abuse of AU allegedly committed by [defendant]." *Masi*, 346 Mich App at 20, quoting *Morse*, 231 Mich App at 437.

In the instant case, both parties agree that the conviction requirement articulated in *Morse* is unduly burdensome and that a prior conviction should not be the determining factor for admitting evidence of conduct otherwise barred by the rape-shield statute. We agree.

As recognized earlier in this opinion, none of the caselaw that *Morse* found persuasive required that prior acts of sexual abuse result in a conviction. Nor do we see

15

any persuasive reason to include such a requirement. Accordingly, we overrule *Morse* to the extent that it requires a conviction related to the prior sexual conduct of a complainant. We hold that once a sufficient offer of proof is made by a defendant, the trial court must hold an *in camera* evidentiary hearing to determine whether the defendant is constitutionally entitled to present particular evidence that is otherwise excluded under the rape-shield statute. See *People v Butler*, 513 Mich 24, 32; 6 NW3d 54 (2024). At the hearing, the court must determine whether the defendant has shown that (1) the prior act occurred, (2) the act closely resembled those at issue, (3) the act is relevant to a material issue, (4) the evidence is necessary to the defendant's case, and (5) the probative value of the evidence outweighs its prejudicial effect. See *Pulizzano*, 155 Wis 2d at 651-652.

We believe that this test provides the appropriate balance between protecting a defendant's right to confrontation and right to present a defense and protecting the interests of minors who are subjected to this sensitive examination. While evidence of prior sexual conduct is generally prohibited, there are circumstances in which a minor's sexual knowledge is so probative that the defendant's right to confrontation or right to present a defense hinges on explaining why that knowledge exists. See *State v Jacques*, 558 A2d 706, 708 (Me, 1989) (explaining that, in these circumstances, a defendant may probe a minor's sexual knowledge "for the limited purposes of rebutting the jury's natural assumption concerning a child's sexual innocence and of protecting the defendant's rights"). The factors, we believe, properly balance both the interests of a defendant and the interests of a minor child by allowing for the examination of a minor child's sexual knowledge only when there has been a sufficient showing that the evidence is necessary to preserve a defendant's right to confrontation or right to present a defense.

Because both the Court of Appeals and the trial court were obligated to apply the conviction requirement articulated in *Morse*, we remand this case to the trial court to conduct an *in camera* evidentiary hearing to apply the new standard articulated in this opinion. At the hearing, the trial court should determine whether defendant presents sufficient proof to admit the evidence of prior sexual abuse in this case and, if necessary, make a preliminary determination as to whether, and the extent to which, the evidence is otherwise admissible under the rules of evidence.

## IV. CONCLUSION

For the reasons outlined in this opinion, we affirm in part and vacate in part the decisions of the Macomb Circuit Court and the Court of Appeals, and we remand this case to the Macomb Circuit Court for proceedings that are consistent with this opinion. We do not retain jurisdiction.

> Kyra H. Bolden
> Megan K. Cavanagh
> Brian K. Zahra
> Richard H. Bernstein
> Elizabeth M. Welch
> Kimberly A. Thomas

HOOD, J., did not participate because the Court considered this case before he assumed office and because he was on the Court of Appeals panel.

17